**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MICHAEL FARKAS,

      Plaintiff,

vs.                                                    CASE NO. 3:11-cv-242-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

## ORDER AND OPINION

This case is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for a period of disability and disability insurance benefits (DIB).  Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated May 27, 2011 (Doc. # 9).  The Commissioner has filed a transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).  For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 10, 2007 with an alleged onset date of December 15, 2006 (Tr. 140-150).  Plaintiff's application was denied initially on December 7, 2007, and upon reconsideration on June 24, 2008 (Tr. 87-89, 94-95).  Plaintiff requested an administrative

hearing, which was held on September 29, 2009 in Jacksonville, Florida (Tr. 34). Administrative Law Judge ("ALJ") Stephen Calvarese issued a decision denying Plaintiff's claim on November 24, 2009 (Tr. 12-28).   Plaintiff filed a request for review, which the Appeals Council denied on January 14, 2011 (Tr. 1-3).  Plaintiff's current counsel of record, Erik W. Berger, Esq., filed the instant action in federal court on March 11, 2011 (Doc. # 1).

## II.  Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits if he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months.  20 C.F.R. § 404.1505.[1]  The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits.   *See* 20 C.F.R. § 404.1520.   First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national

---

[1] Unless otherwise specified, all references to 20 C.F.R. will be to the 2011 edition.

2

economy, then he is disabled.  20 C.F.R. § 404.1520(f).  A plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

In 1996, Congress amended the statutory definition of disability under the Social Security Act to preclude the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled.  *See* Contract with America Advancement Act of 1996, Pub. L. No. 104-121, § 105(a)(1) and 105(b)(1), 110 Stat. 847, 852-53 (codified as amended at 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J) (1996)).  The Regulations make clear that a finding of disability is a condition precedent to the application of the amended law.  *See* 20 C.F.R. § 404.1535(a).  The Regulations state that "[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  *Id.*  The key factor to be considered is whether the claimant would still be disabled absent the drug addiction or alcoholism.  20 C.F.R. § 404.1535(b)(1).  "[T]he claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination." *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001).

If a claimant is initially disabled when considering substance abuse, the ALJ must evaluate the claimant's physical and mental limitations that would remain if the claimant were to stop using alcohol and drugs.  20 C.F.R. § 404.1535(b)(2).  Substance abuse is deemed a "contributing factor material" to the finding of disability if, presuming the claimant were to stop abusing substances and considering the claimant's remaining limitations,

those remaining limitations would not independently be disabling.   20 C.F.R. § 404.1535(b)(2)(ii).  As noted above, if substance abuse is a "contributing factor material" to the finding of disability, then the Act precludes a finding of disability.  *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

In the instant case, the ALJ found Plaintiff met the Social Security Act's insured status requirements through December 31, 2011 (Tr. 14).  At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 15, 2006, the beginning of the time period under consideration.  *Id.*  The ALJ noted Plaintiff worked after the alleged onset date, but that the work was an unsuccessful attempt.  *Id.*  At step two, the ALJ found Plaintiff suffered from the following severe impairments:  degenerative disc disease of the cervical spine; osteoarthritis of the cervical and thoracic spine; chronic obstructive pulmonary disease (COPD); depression/anxiety; and substance abuse (Tr. 15).  At step three, the ALJ determined Plaintiff's impairments, including the substance abuse disorder, met sections 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d)).  *Id.*  Thus, the ALJ found Plaintiff was disabled.

The ALJ next considered Plaintiff's physical and mental limitations that would remain if he stopped the substance use.  At step two, the ALJ determined that if Plaintiff stopped the substance use, his remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and he would continue to have a severe impairment or combination of impairments (Tr. 16).  At step three, the ALJ determined that if Plaintiff stopped the substance use, he would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part

4

404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d)).  *Id.*  At step four, the ALJ found that

if Plaintiff stopped the substance use, he would have the residual functional capacity ("RFC")

> to perform medium work[2] as defined in 20 CFR 404.1567(c),
> including the ability to lift and carry 50 pounds occasionally and
> 25 pounds frequently, and to stand 6 hours in an 8-hour
> workday, walk 6 hours in an 8-hour workday, and sit 6 hours in
> an 8- hour workday with normal breaks. However, the claimant
> could perform only occasional overheard work bilaterally and
> must avoid concentrated exposure to fumes, odors, dusts, and
> gases. Additionally, the claimant would have moderate
> limitation in his ability to understand, remember, and carry out
> detailed instructions; maintain attention and concentration for
> extended periods; complete a normal workday and workweek
> without interruptions from psychologically based symptoms;
> perform at a consistent pace without an unreasonable number
> and length of rest periods; and set realistic goals and make
> plans independently of others. The claimant would have some
> mild difficulty maintaining concentration, persistence, and pace
> for extended or complex tasks; he would be able to read
> sometimes; he would be withdrawn socially, but would be able
> to shop and could relate adequately without evidence of
> conflicts; and he would have an adequate ability to adapt but
> would require some assistance with planning**.**

 (Tr. 17-18.)  The ALJ found if Plaintiff stopped the substance use, this RFC would enable

him to perform his past relevant work as an informal cook and waiter (Tr. 27).   The ALJ

found Plaintiff would not be disabled if he stopped the substance use, and such substance

use disorder was a contributing factor material to the disability determination.  *Id.*

Therefore, the ALJ found Plaintiff was not under a disability since December 15, 2006, the

---

[2]  "Medium work involves lifting no more than 50 pounds at a time with frequent
lifting or carrying of objects weighing up to 25 pounds.  If a person can do medium work,
he or she can also do sedentary and light work.  20 C.F.R. § 404.1567(c).

alleged onset date.  *Id.*

## III.  STANDARD OF REVIEW

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d

6

1143, 1145 (11th Cir. 1991)).   Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

## IV. ANALYSIS

Plaintiff argues the ALJ's finding that Plaintiff's alcoholism was a contributing factor material to his disability is not supported by substantial evidence (Doc. #12 at 14).  Plaintiff claims the medical evidence pertaining to his physical impairments supports a finding that he is disabled.  *Id.*  Plaintiff argues the opinion of his treating physician Dr. William Pearce supports this claim, and the ALJ did not assign the appropriate weight to his opinion.  *Id.* at 19.  Plaintiff also takes issue with the weight the ALJ assigned to non-examining physician Dr. Eric Puestow ("Dr. Puestow").  *Id.*  Plaintiff further claims he experiences "significant limitations" as a result of his mental impairments when he is not drinking

7

alcohol.  *Id.*  Plaintiff argues the opinion of his treating physician Dr. Mohammad Ayubi ("Dr. Ayubi") supports this claim, and the ALJ did not properly specify why he did not assign Dr. Ayubi's opinion controlling weight.  *Id.* at 17.  Plaintiff's individual arguments will be addressed below.

## A.    Listings 12.04 and 12.09

Plaintiff argues the ALJ failed to "point to" any substantial medical evidence or analysis to support his finding that Plaintiff's alcoholism was severe enough that in conjunction with other impairments Plaintiff met listings 12.04 and 12.09 of C.F.R. Part 404, Subpart P, Appendix 1 (Doc. #12 at 12, 14).  The Court disagrees.

Listing 12.04 is entitled "Affective Disorders" and is characterized "by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."  Further, "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

In the instant case, the ALJ incrementally evaluated 12.04 by its "A," "B," and "C" criteria and found: the paragraph A criteria was satisfied because Plaintiff "has depressive symptoms characterized by appetite disturbance, sleep disturbance, decreased energy, and difficulty concentrating;" the paragraph B criteria was satisfied because Plaintiff was deemed to have at least a marked restriction in the activities of daily living, moderate difficulties in social functioning, and at least marked difficulties with regard to concentration, and persistence or pace; and the paragraph C criteria was not satisfied because the

evidence failed to establish the presence of such criteria (Tr. 17).[3]  In reading the ALJ's decision it is clear he identified evidence in the record that supports his finding Plaintiff's impairment met listing 12.04.  The Court's independent review of the record substantiates ALJ Calvarese's finding.

Listing 12.09 is entitled "Substance Addiction Disorders" and "is met with behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system if the level of severity meets other specified listings, including the listing for [depressive disorder under 12.04]."  *See Pelletier v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00282-JAW, 2011 WL 2912685, *3 (D.Me. Jul. 18, 2011) (internal quotes and citations omitted); see also 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.09(B).

The ALJ found Plaintiff was credible in his testimony that he experiences symptoms of depression and anxiety, which are exacerbated by his substance use; he experiences decreased appetite, sporadic sleep patterns, decreased energy and lack of motivation, and difficulty concentrating; and when Plaintiff's symptoms are at their worst, all he does is

---

[3] Paragraph C criteria is defined as:  "Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support."  Additionally, there must be one of the following:
> (1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C).

sleep and he does not take care of his basic personal care or household chores (Tr. 15; *see also* Tr. 45-46).  The ALJ then listed evidence in the record that supported finding Plaintiff's mental impairment of depression is significantly exacerbated by his continued drinking (Tr. 16).  The ALJ referenced Plaintiff's statement that his depressive symptoms improve when he is sober, as well as Plaintiff's treating physician's statements that Plaintiff's anti-depressant medication will be less effective with alcohol use (Tr. 16; *see also* Tr. 55, 646).  The ALJ correctly noted Plaintiff has been treated for his alcohol abuse as an inpatient at least twice and has attended substance abuse recovery support group meetings (Tr. 16; *see also* Tr. 286, 347, 431-43).  The ALJ further noted the record's reflection that Plaintiff continues to drink alcohol, as Plaintiff reported drinking three to four beers a day to Dr. Pearce as late as September 11, 2009 (Tr. 16; *see also* Tr. 782).

Upon consideration of the ALJ's decision and the record evidence, the Court finds substantial evidence supports finding Plaintiff met the 12.04 listing.  Furthermore, substantial evidence supports the ALJ's explicit finding that Plaintiff's "mental impairment of depression is significantly exacerbated by his continued drinking" (Tr. 16).

Because Plaintiff's substance abuse was a factor in determining Plaintiff met listing 12.04, it was incumbent upon the ALJ to ascertain whether Plaintiff met listing 12.09. Alcohol is a substance known to affect the central nervous system.  *See Hardwick v. Crosby* 320 F.3d 1127, 1167 n.159 (11th Cir. 2003) (explaining that Methaqualone, like alcohol, has a depressive effect on the central nervous system that leads to a sensation commonly referred to as a "high"); *see also Your Body and Alcohol*, Office of Alcohol & Drug Educ., Univ. of Notre Dame, http://oade.nd.edu/educate-yourself-alcohol/your-body-and-alcohol/ (last visited Mar. 7,

2012).  Plaintiff's own testimony substantiated that Plaintiff would drink alcohol to calm him down when he felt a lot of anxiety (Tr. 55).  Record evidence established that Plaintiff would have suicidal ideation when he was actively drinking (*see, e.g.*, Tr. 286 (Shands Healthcare Treatment Note dated Apr. 13, 2007)).

Having found substantial evidence supported ALJ Calvarese's finding that alcoholism was a significant factor in determining Plaintiff met listing 12.04, it is axiomatic that substantial evidence would support the ALJ's finding Plaintiff met listing 12.09 for substance abuse through the severity of Plaintiff's "depressive syndrome" under listing 12.04.  Plaintiff's argument to the contrary is without merit.

The Court will now turn to  Plaintiff's argument that the ALJ erred in finding Plaintiff's alcoholism was a contributing factor material to the finding of disability.

## B.     Whether Plaintiff's Alcoholism is a Contributing Factor Material to the Finding of Disability

Plaintiff argues that in the absence of alcohol use he continues to experience both physical and mental impairments that support a finding of disability.  Plaintiff states this claim is supported by the opinions of his treating physicians, and the ALJ erred by not according them proper weight.  Defendant responds that the evidence confirms Plaintiff's symptoms are exacerbated by his substance use, and the ALJ applied the appropriate weight to the treating physicians' opinions due to inconsistencies with the medical record and treatment history.

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan,* 937 F.2d at 583; 20 C.F.R. §

404.1527(d).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Therefore, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527 (d)(2).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the opinion based on the factors listed in the regulations.[4]

When discounting a treating physician's opinion, the ALJ "must clearly articulate reasons showing 'good cause' for discounting it."  *Tolbert v. Astrue*, No. 3:08-cv-1236-J-JRK, 2010 WL 962714, at *15 (M.D. Fla. Mar. 16, 2010);[5] s*ee also, e.g.*, *Smith v. Astrue*,

---

[4] These factors are: (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.  *Englert v. Apfel,* No. 971526CIVORL18C, 1999 WL 1289472, at *4 (M.D. Fla. June 16, 1999); 20 C.F.R. § 404.1527(d).

[5] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on
(continued...)

12

No. 8:10–cv–262–T–17AEP, 2011 WL 843969, at *10 (M.D. Fla. Feb. 18, 2011) (finding the ALJ sufficiently addressed good cause for discounting a treating physician's opinion when the ALJ noted in part that the physician's opinion was inconsistent with the medical evidence of record, as well as the physician's own medical records).  A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); 20 C.F.R. § 404.1527(d)(2).

## I.    Physical Impairments

Dr. Pearce began treating Plaintiff in December 2006 (Tr. 690).  At that time, Plaintiff's chief complaints were reported as slight neck pain, slight numbness in his fifth and index finger of his left hand, and intermittent weakness of his left leg (Tr. 682).  Dr. Pearce noted Plaintiff's gait was coordinated and smooth, and he had no muscle atrophy or weakness (Tr. 687).  A cervical MRI performed on April 16, 2007 showed multilevel spondylosis,[6] most significant at C5-6, and uncovertebral joint hypertrophy that caused severe left and moderate right foraminal narrowing at C6-7 (Tr. 453-54).

On August 30, 2007, Plaintiff reported his chronic back pain was becoming gradually worse (Tr. 418).  Dr. Pearce assessed cervical disc disease, osteoarthritis of the cervical spine, thoracic spine pain, and intermittent weakness of the left leg; he also prescribed diclofenac (a nonsteroidal anti-inflammatory drug) and ordered thoracic X-rays and a bone

---

[5](...continued)
or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

[6] Spondylosis is defined as "ankylosis (stiffening of a joint) of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature."  Thomas Lathrop Stedman, Stedman's Medical Dictionary 87, at 1457 (25th ed. 1990).

scan (Tr. 420-21).   Dr. Pearce also assessed the previous diagnoses on November 29, 2007, February 21, 2008, and April 30, 2008 examinations; however, additional notations or prescriptions for these diagnoses were not noted (Tr. 404-07, 566, 581).   Thoracic spine X-rays performed on October 30, 2007 showed osteoarthritic changes at T9 and T10 (Tr. 452), and a bone scan performed on November 2, 2007 indicated osteopenia and almost osteoporosis, for which Dr. Pearce recommended Fosamax and a calcium supplement (Tr. 415).

In March 2009 Plaintiff reported to Dr. Pearce that he was experiencing mid-back and neck pain – specifically, that certain positions, lifting, standing, and carrying objects made the pain worse.   Plaintiff reported "medication makes the pain better," and requested his medication to be renewed (Tr. 712).   Dr. Pearce in turn prescribed ibuprofen in place of the diclofenac (Tr. 727).   Plaintiff did not see Dr. Pearce again until September 11, 2009 when Plaintiff reported neck pain when turning his head to the left, with radiation to his scapula and down his arm.   Plaintiff also reported a new symptom of a muscle tremor in his index finger (Tr. 782).   Dr. Pearce changed Plaintiff's prescription from ibuprofen back to diclofenac and ordered a cervical MRI (Tr. 785).   The cervical MRI from October 15, 2009 revealed multilevel degenerative findings with canal and foraminal narrowing (Tr. 796-97).   A note from Dr. Pearce on October 29, 2009 referred Plaintiff for a neurological consultation, rather than a surgical consultation, for his finger tremor, which could have been consistent with radiculopathy (Tr. 800).

On March 30, 2009, Dr. Pearce completed a Physical Residual Functional Capacity Questionnaire that noted Plaintiff had sharp back and dull neck pain (Tr. 694).   It also noted the Plaintiff had the following capabilities:   sit for one hour or less at one time before

14

needing to get up; stand one hour or less at one time before needing to sit down or walk around; and sit a total of three to four hours in an eight-hour workday, which must include periods of walking around every forty-five minutes during an eight-hour workday for ten minutes each (Tr. 695-96).  Dr. Pearce further noted Plaintiff needs a job that permits shifting positions at will from sitting, standing, or walking, and Plaintiff will sometimes need to take unscheduled breaks every few hours in an eight-hour workday.  Dr. Pearce also noted Plaintiff can occasionally lift twenty pounds, can never climb ladders, can rarely stoop and crouch/squat, and can occasionally twist and climb chairs (Tr. 697).

The ALJ did not assign Dr. Pearce's opinion controlling weight, finding that his opinion was not supported by objective medical evidence and was inconsistent with other substantial evidence, including the conservative nature of treatment he employed, the lack of a recommendation for surgery, and Plaintiff's activities of daily living (Tr. 22).

This Court finds substantial evidence supports the ALJ's decision in not assigning Dr. Pearce's opinion controlling weight.  The Physical RFC performed by Dr. Pearce notes several significant limitations; however, his opinion was not bolstered by the medical evidence and was also inconsistent with his own medical records.  The ALJ's factual explanation of Dr. Pearce's treatment of Plaintiff articulated these inconsistencies, and specifically noted the conservative nature of Plaintiff's treatment (Tr. 20-22).  *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (finding substantial evidence discredited the plaintiff's testimony regarding his impairments when the course of treatment for his impairments were "entirely conservative in nature").  Although diagnostic studies have shown osteoarthritis in the Plaintiff's cervical and thoracic spine, with some canal and foraminal narrowing, the course of treatment for these ailments consisted solely of mild

pain medications–diclofenac and ibuprofen (Tr. 21, 380-460, 508-692).  Additionally, there was no recommendation for physical therapy or injections, and no doctor has recommended surgery.  *Id.*  Dr. Pearce did refer Plaintiff in October 2009 to a neurologist for his finger tremor, but the ALJ noted the uncertainty of this relating to Plaintiff's existing neck and back conditions (Tr. 21, 800).

Further, Plaintiff's activities of daily living were inconsistent with the limitations assessed by Dr. Pearce.  The Eleventh Circuit has held an ALJ does not need to give considerable weight to a treating physician's opinion "if evidence of the claimant's daily activities contradict[s] the opinion."  *Forrester v. Comm'r of Soc. Sec.*, No. 11-10736, 2012 WL 45446, at *2 (11th Cir. Jan. 10, 2012).  Plaintiff testified at his hearing that he could perform necessary household chores such as dusting, sweeping, mopping, washing dishes, and going grocery shopping (Tr. 50).  Plaintiff also testified that since becoming homeless he spends most of the day riding the public bus to the Veteran s Affairs Hospital ("VA"), the Housing and Urban Development office ("HUD"), and the post office ( Tr. 56).

In *Cooper v Astrue*, the Court found the ALJ, after discussing the plaintiff's medical history at length, adequately explained his reasons for discounting a treating physician's opinion and instead relying on those of state agency physicians when: the physician's opinion that the plaintiff could not work was not submitted with any supporting treatment notes; objective medical evidence of record did not support the physician's opinion; and the plaintiff's complaints to the physician were "over-exaggerated" when compared with plaintiff's activities of daily living.  No. CV 308-067, 2009 WL 2842744, at *5 (S.D. Ga. May 29, 2009).  The Plaintiff in this case is similar to the plaintiff in *Cooper*, where the ALJ found good cause to discount a treating physician's opinion when the record medical evidence,

16

physician's own notes, and the plaintiff's activities of daily living were inconsistent with the physician's opinion.

Accordingly, the Court finds the ALJ articulated several reasons to discount Dr. Pearce's opinion, and those reasons are supported by substantial evidence.  "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court cannot "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 300 Fed. Appx. 741, 743 (11th Cir. 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

Plaintiff also takes issue with the "great weight" the ALJ assigned to the opinion of non-examining State agency physician Dr. Puestow (Doc. #12 at 19).  Dr. Puestow completed a physical RFC assessment on June 18, 2008 and found Plaintiff could: (1) occasionally lift or carry up to fifty pounds; (2) frequently lift or carry up to twenty-five pounds; (3) stand or walk for about six hours, with normal breaks, during an eight hour work day; (4) sit for a total of about six hours, with normal breaks, during an eight hour workday; and (5) has unlimited push or pull, but was limited in his reach in all directions (Tr. 501, 503).  Dr. Puestow considered Plaintiff's neck and back pain in rendering his assessment; however, he noted that Plaintiff's "allegations exceed[ed] findings," and that the assessed RFC was in accord with the data (Tr. 505).

The ALJ assigned "great weight" to Dr. Puestow's opinion, who reviewed the record on consideration.  The ALJ stated he gave Dr. Puestow's opinion greater weight than the other consulting physician because it was based on more up-to-date records, and his opinion was consistent with the medical evidence of record and supported by the record

17

as a whole (Tr. 21-22).   Social Security Regulations require that an ALJ consider the opinions of non-examining physicians.   20 C.F.R. § 404.1527(f).   The weight that should be assigned to a non-examining physician's opinion "depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence." *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. Appx. 869, 873 (11th Cir. 2011); *see also Oldham v. Schweiker*, 660 F.2d 1078, 1084 (Former 5th Cir. Unit B Nov. 1981)("The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.").

"While the opinion of a treating physician is entitled to deference, once his opinion has been properly rejected, the ALJ may rely upon the opinion of an agency examiner or reviewer."   *Dixon v. Astrue*, No. 5:09cv320/RS/EMT, 2010 WL 4942141, at *15 (N.D. Fla. Oct. 26, 2010) .   As discussed above, the ALJ properly determined that good cause existed to give little weight to Dr. Pearce's opinion.   Further, the ALJ clearly articulated his reasons for giving great weight to Dr. Puestow's opinion, when he stated that Dr. Puestow's opinion was consistent with the medical evidence and record as a whole.   Therefore, the undersigned finds the ALJ did not err in weighing the opinion evidence.

### ii.   Mental Impairments

Plaintiff first reported symptoms of depression to Dr. Pearce in December 2006 (Tr. 681-90).   It was recorded that Plaintiff drank most days, usually two beers and sometimes vodka, as a way to "not have to deal with whatever is going on in his life."  (Tr. 683).   Dr. Pearce prescribed Celexa and referred Plaintiff to the VA's mental health department (Tr. 688).   Plaintiff began seeing Dr. Ayubi in March 2007, and was diagnosed with major

depression, panic disorder, alcohol dependence disorder, and assigned a Global Assessment of Functioning (GAF) score of 50 (Tr. 392, 396).[7]  On April 13, 2007, Plaintiff presented himself to Shands Hospital requesting alcohol detoxification; a urine drug test also showed positive for cocaine (Tr. 286, 288).   Final impressions were listed as depression and alcohol abuse (Tr. 288).  Plaintiff was transferred to Meridian Behavioral Healthcare where upon admission his GAF score was listed at 20 (Tr. 304).[8]  Plaintiff was treated from April 14 to April 19 and upon discharge had a GAF score of 45-50 (Tr. 314, 318).   Upon discharge to the VA on April 27, 2007, Roger Todd Davis, a clinical psychologist, performed a psychological evaluation of Plaintiff (Tr. 396-404).  Plaintiff stated he was depressed, but not suicidal.  *Id.*  Plaintiff stated his unemployment was due to his depression, but acknowledged that drinking "played a role" in his unemployment; Davis agreed that depression resulted in some decreased work activity, but that alcohol abuse plays a significant role.  *Id.*  Plaintiff's GAF score at this time was assessed at 55,[9] which

---

[7] A GAF score of 41-50 is defined is defined as "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.).

[8] A GAF score of 11-20 is defined as "Some danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) OR occasionally fails to maintain minimal personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g., largely incoherent or mute)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.).

[9] GAF score of 51-60 is defined as "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.).

indicates only moderate symptoms. *Id.*

Plaintiff met with Dr. Ayubi on May 4, 2007 after being sober for twenty-two days, and reported a gradual improvement in symptoms (Tr. 646). Dr. Ayubi discussed with Plaintiff the need to be totally abstinent from alcohol to allow his anti-depressant to be more effective. *Id.* Plaintiff entered an inpatient alcohol treatment program at Serenity House of Volusia from May 22, 2007 to June 21, 2007, and regularly attended substance abuse recovery support group meetings at the VA from the end of May 2007 throughout June 2007 (Tr. 386-88). On August 24, 2007 Plaintiff reported to Dr. Ayubi that he still had symptoms of depression, but they were manageable and tolerable, and that he had maintained sobriety over the past several months (Tr. 423). Dr. Ayubi noted Plaintiff had better insight and good judgment (Tr. 424). On November 16, 2007, Plaintiff reported to Dr. Ayubi that his symptoms had worsened since the prior visit because he was robbed at knife point, and he was having difficulties with sleep and anxiety (Tr. 595). Dr. Ayubi prescribed Hydroxyzine in addition to the already prescribed Paxil. *Id.*

The Plaintiff next saw Dr. Ayubi on March 17, 2008 and reported his symptoms as the same (Tr. 573). Dr. Ayubi noted Plaintiff had good insight and judgment, and provided a twenty minute supportive therapy session (Tr. 573, 575). On October 31, 2008, Plaintiff reported adequate sleep and fair energy levels to Dr. Ayubi, but stated he remained depressed (Tr. 556).

At a VA compensation and pension exam on November 25, 2008, Plaintiff reported he was depressed, but his most recent "episode" was two months prior (Tr. 546). Plaintiff admitted to drinking alcohol ten days prior, to using powder cocaine four to six weeks prior, and reported he was not attending alcohol anonymous classes. *Id.* The clinical

psychologist performing the exam, Roger Todd Davis, assigned Plaintiff a GAF score of 55, and noted "the alcohol abuse interferes with occupational functioning, the cocaine use/abuse may also play a role; given that the veteran stated that the most significant depression was two months ago, this appears to play less of a role with the unemployment than the alcohol and cocaine."  (Tr. 549-50).

On March 18, 2009 Plaintiff told Dr. Pearce he wanted a different psychologist, and was significantly depressed (Tr. 706, 710).  Plaintiff also reported he was drinking between one to two quarts of beer in a day (Tr. 708).  Plaintiff began seeing his new psychologist Dr. Marchant W. Van Gerpen ("Dr. Van Gerpen") on May 1, 2009 and reported he was not getting enough emotional feedback from Dr. Ayubi (Tr. 751).  Dr. Van Gerpen increased Plaintiff's dose of Paxil and ordered individual counseling with a psychologist at Plaintiff's request (Tr. 755).  Plaintiff missed his counseling session scheduled later that month, as well as the rescheduled session the following month (Tr. 747).  Plaintiff also missed his appointment with Dr. Van Gerpen on August 5, 2009 (Tr. 742).

On September 4, 2009 Dr. Van Gerpen's impression of Plaintiff was that he had "multiple stressors, most of his own making."  (Tr. 737).  Dr. Van Gerpen increased his Paxil and recommended Plaintiff continue with counseling, although he had not yet attended a scheduled session (Tr. 738).  On September 11, 2009 Plaintiff reported to Dr. Pearce that he was drinking three to four beers a day (Tr. 782).

On September 15, 2009 Plaintiff attended his first counseling session with psychologist David Houtler ("Dr. Houtler"), Ph. D., but was thirty minutes late for his appointment, preventing Dr. Houtler from performing an assessment interview (Tr. 781).

However, Dr. Houtler did conduct a brief interview and noted Plaintiff had a mild dysphoric[10] to mild positive mood; his insight, judgment, and reliability were good; and his thought process was goal oriented and linear (Tr. 782).   Dr. Houtler assessed alcohol abuse and dependence, and recurrent depression.   *Id.*

Dr. Ayubi submitted a mental RFC questionnaire on February 21, 2008,  where he listed major depression and alcohol dependence in early remission as Plaintiff's primary impairments, and assigned a current GAF score of 55 (Tr. 470).   Dr. Ayubi noted he was seeing Plaintiff every three or four months for thirty minutes (Tr. 470-72).   Dr. Ayubi submitted Plaintiff would have noticeable difficulty more than one hour per day or more than one half day per week with regard to his ability to:   remember work-like procedures; carry out very short and simple instructions; maintain attention for two-hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in routine work setting; deal with normal work stress; understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plans independently of others; and deal with stress of semiskilled and skilled work (Tr. 471-72).

---

[10] Dysphoria is defined as "a mood of general dissatisfaction, restlessness, depression, and anxiety."  *See* MediLexicon, http://www.medilexicon.com/medical dictionary.php?t=88261 (last visited March 2, 2012).

In regards to Dr. Ayubi's opinion the ALJ stated the following:

> To the extent Dr. Ayubi's opinion is more restrictive than the assessed [RFC], the undersigned does not assign it controlling weight, as those restrictions are not consistent with the medical evidence of record or supported by the record as a while, for the reasons discussed above. However, to the extent that Dr. Ayubi's opinion is consistent with the accessed [RFC], the undersigned assigns it controlling weight because those restrictions are supported by the medical evidence of record and supported by the record as a whole.

(Tr. 26.)  Plaintiff takes issue with the ALJ's use of the language "for the reasons discussed above" to reference the evidence supporting his decision to not give controlling weight to portions of Dr. Ayubi's opinion.  Plaintiff alleges this "generic reference" fails to provide the good cause necessary to discount Dr. Ayubi's opinion (Doc. # 12 at 17).

Plaintiff is correct that "[w]hen electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons."  *Phillips*, 357 F.3d at 1241. However, Plaintiff's argument, that the ALJ cannot refer to his previous discussion of the evidence when articulating the weight given to an opinion, is misguided.  Rather, the standard is whether the ALJ has provided "good cause" to discount the treating physician. *Id.* at 1240.  Good cause exists to discount a treating physician's opinion when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.* at 1240-41.

In the instant case, the ALJ expressly noted that some of Dr. Ayubi's restrictions were not consistent with the medical evidence of record or supported by the record as a whole.  Previous to this finding, the ALJ articulated a lengthy discussion of why the alleged limitations of Plaintiff's depression were not supported by the record, including: (1) no

23

treating source told Plaintiff he was unable to work based on mental impairments; (2) his treating psychiatrists (both Dr. Ayubi and Dr. Van Gerpen) documented GAF scores ranging from only 50 to 55, indicating moderate symptoms; and (3) aside from Plaintiff's one psychiatric admission, based in part on the need for alcohol detoxification, Plaintiff had been treated solely with medications and outpatient therapy, including a few psychological counseling sessions (two of which he failed to attend), and sessions with Dr.Ayubi every few months consisting of brief counseling and dispensing of medication (Tr. 22-25). *See Wolfe*, 86 F.3d at 1078 (finding substantial evidence discredited the plaintiff's testimony regarding his impairments when the course of treatment for his impairments were "entirely conservative in nature").   In addition to a conservative course of treatment, Plaintiff continued to drink alcohol despite warnings from Dr. Ayubi of the effect it would have on his anti-depressant medication (Tr. 646).   Throughout the record alcohol use has been noted as significantly inhibiting Plaintiff's occupational ability (Tr. 396-404, 549-50, 737), and periods of sobriety have paralleled "manageable and tolerable" depression symptoms (Tr. 423-24, 646).   The ALJ further noted that Plaintiff's activities of daily living are not consistent with a complete inability to work based on mental impairments. *See Forrester*, 2012 WL 45446, at *2 (holding an ALJ need not give considerable weight to a treating physician's opinion "if evidence of the claimant's daily activities contradict[s] the opinion"). The ALJ noted Plaintiff's ability to perform household chores, read, listen to music, attend doctor's appointments, go to the HUD office, and check his mail, including the fact that Plaintiff was able to navigate the public transportation system to reach these destinations (Tr. 25).

In light of the foregoing, this Court finds the ALJ clearly articulated good cause to

24

discount Dr. Ayubi's opinion.  The ALJ's reasoning that Dr. Ayubi's opinion was inconsistent with the medical evidence of record and not supported by the record as a whole was clearly articulated and supported by his factual recitation and reasoning throughout his opinion. "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court cannot "disturb the ALJ's refusal to give the opinion controlling weight." *Carson,* 2008 WL 4962696, at *1.

## V. CONCLUSION

Upon due consideration, the undersigned finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.  Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of March, 2012.

THOMAS E. MORRIS
United States Magistrate Judge

Copies to: All counsel of record
and *Pro se* parties, if any